UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KRISTINE HABIB, | ) | 1:04-CV-6003-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER DENYING |
| v. | ) | PLAINTIFF'S SOCIAL SECURITY |
| | ) | COMPLAINT (DOC. 1) |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social | ) | ORDER DIRECTING THE ENTRY OF |
| Security, | ) | JUDGMENT FOR DEFENDANT JO ANNE B. |
| | ) | BARNHART, COMMISSIONER OF SOCIAL |
| Defendant. | ) | SECURITY, AND AGAINST PLAINTIFF |
| | ) | KRISTINE HABIB |
| | ) | |

Plaintiff is represented by counsel and is proceeding in forma pauperis with an action against the Commissioner of Social Security (Commissioner). Plaintiff seeks judicial review of a final decision of the Commissioner denying Plaintiff's application for disability insurance benefits (DIB) pursuant to Title II of the Social Security Act (Act) and supplemental security income (SSI) pursuant to Title XVI of the Act. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all further proceedings, including the entry of a final judgment.[1] The matter

---

[1] Judge Anthony W. Ishii ordered the case assigned to the undersigned Magistrate Judge for all purposes on December 28, 2004.

is currently before the Court on the parties' briefs, which have been submitted without oral argument to the Honorable Sandra M. Snyder, United States Magistrate Judge.

Prior Proceedings

Plaintiff filed an application for DIB and SSI benefits on July 25, 2002, alleging disability beginning on November 9, 1997. (A.R. 86-88, 271-73.) Plaintiff's application was denied initially and on reconsideration. (A.R. 64-67, 70-74.) Plaintiff requested a hearing before an Administrative Law Judge (ALJ) of the Social Security Administration (SSA). On February 4, 2004, Plaintiff appeared with counsel and testified before the ALJ, the Honorable David E. Flierl. (A.R. 276-309.) The ALJ issued a decision denying Plaintiff's application for benefits on March 17, 2004. (A.R. 28-34.) On May 22, 2004, the Appeals Council denied Plaintiff's request for review. (A.R. 20-22.) On August 4, 2004, the Appeals Council declined to reopen the ALJ's decision after receiving additional evidence. (A.R. 4.)

On July 23, 2004, Plaintiff filed the complaint in the instant action. Plaintiff filed an opening brief on July 1, 2005. On August 3, 2005, Defendant filed a brief in opposition.

Administrative Findings

The ALJ concluded that Plaintiff's impairments, consisting of anxiety disorder, dysthymic disorder, blindness in the left eye, and bilateral wrist pain were severe but did not meet or medically equal a listed impairment. (A.R. 30.) The ALJ found that Plaintiff's residual functional capacity (RFC) was to lift and carry occasionally twenty pounds and frequently ten pounds; avoid work around heights or hazardous machinery; avoid frequent

forceful or prolonged bilateral pushing, pulling, or gripping with the upper extremities; and avoid work requiring depth perception. (A.R. 33.)

Finding that Plaintiff's past relevant work as a manicurist did not require the performance of activities precluded by her RFC, the ALJ concluded that Plaintiff was capable of working in the position of a manicurist as customarily performed in the national economy. (A.R. 32.) Accordingly, Plaintiff was not disabled at any time through the date of the decision.

<u>Issues Presented</u>

The following issues are presented for decision:

1) Whether the ALJ properly discredited Plaintiff's subjective complaints;

2) Whether the ALJ improperly failed to develop the mental health record; and

3) Whether the ALJ properly evaluated Plaintiff's mental health evidence.

<u>Facts</u>

I. <u>Medical History</u>

Plaintiff underwent a psychological evaluation on October 8, 1997, about one month before the alleged onset date of disability, at the Department of Rehabilitation in Fresno, California. (A.R. 136-142.) During testing, she exhibited mild learning disorders in reading, writing, and arithmetic, but she had above-average visual motor and logical reasoning abilities. (A.R. 136.)

On January 11, 1999, Plaintiff was treated at the Mental Health Department of the Fresno County Health Services Agency.

(A.R. 170.) She was diagnosed with adjustment disorder and provisional dysthymic disorder. (A.R. 171.) Plaintiff appeared nervous, anxious, and worried; but her thought flow was logical and coherent, and her attention, judgment, and insight were assessed as "good" or "quite good." (A.R. 172.) A subsequent treatment note by a Dr. Robert T. Ensom, M.D., dated April 26, 1999, showed diagnoses of dysthymic disorder and panic disorder with agoraphobia. (A.R. 159.) On testing, Plaintiff exhibited a depressed mood but had "broad and appropriate" affect, no suicidal intent, and exhibited "relevant and coherent but circumstantial" thought content. (A.R. 156, 159.) Plaintiff reported that she was taking nine units at Fresno City College and had received a scholarship for her education from the Department of Rehabilitation. (A.R. 160.)

Plaintiff failed to show for treatment on May 3, 1999 and July 26, 1999; she was unable to attend on June 14, 1999 due to traveling out of state; and a note in November 1999 indicated that Plaintiff had not been in for treatment for several months. (A.R. 157, 150, 154, 148.) Plaintiff's treatment at the Mental Health Department of the Fresno County Health Services Agency was terminated on January 6, 2000. (A.R. 143-46.) Her discharge was based on an assessment that Plaintiff was "no longer depressed [or] anxious," was functioning well, had learned healthy coping skills, and had processed hurtful and painful feelings from her childhood. (A.R. 144.) The discharge document stated that both Plaintiff and her therapist agreed that therapy was no longer needed. (A.R. 144, 146.)

Psychiatrist Ekram Michiel, M.D., conducted a consultative

4

psychiatric examination on November 17, 2002. (A.R. 205-08.) Plaintiff reported to Dr. Michiel that she had never been hospitalized in a psychiatric facility. (A.R. 205.) Dr. Michiel found that Plaintiff kept fair eye contact throughout the interview; her speech was normal in process, with mild latency; she was oriented to person, place, and date; she had a depressed mood and intense affect, but she denied suicidal or homicidal ideation; her thought process was "goal-directed"; and her thought content was not delusional. (A.R. 206-07.) Dr. Michiel concluded his report with diagnoses of anxiety disorder and dysthymic disorder. (A.R. 207.) As to Plaintiff's mental capacity to perform work-related functions, Dr. Michiel determined that Plaintiff was able to maintain adequate attention and concentration; could carry out one-step or two-step simple job instructions but could not carry out an extensive variety of technical and/or complex instructions; and could relate to and interact appropriately with co-workers, supervisors, and the general public. (A.R. 207.)

Plaintiff was treated by an optometrist, Dr. Cole, in June and September 2002. Dr. Cole noted astigmatism in the right eye. (A.R. 203.) Dr. Cole found that although Plaintiff only had the use of her right eye due to a childhood injury, she was not legally blind. (A.R. 202-03.) To reduce Plaintiff's focusing demands, Dr. Cole prescribed glasses with increased power. (A.R. 203.) Dr. Cole did not assess any functional limitations based on Plaintiff's eyesight.

State agency physician Evangeline Murillo, M.D., reviewed the medical evidence and completed a report of Plaintiff's

physical and mental abilities, dated January 7, 2003. (A.R.
211-28.) She found that Plaintiff had only mild restrictions in
her activities of daily living and maintaining social
functioning, concentration, persistence, and pace. (A.R. 221.)
She also noted that Plaintiff's medical records contained
insufficient evidence of episodes of decompensation. (A.R. 221.)
However, Dr. Murillo noted that Plaintiff was "moderately"
limited in her ability to understand, remember, and carry out
detailed instructions. (A.R. 225.)

State agency physician Dr. Glenn Ikawa, M.D., completed a
follow-up disability determination report dated May 6 and 7, 2003
in which he confirmed Dr. Murillo's assessment. (A.R. 211, 244-
45.) Dr. Ikawa noted that he agreed with Dr. Michiel's finding
that Plaintiff's mental RFC was to sustain "SRT" (simple
repetitive tasks). (A.R. 244.)

On January 29, 2003, Plaintiff was examined by Dr. Chinnapa
Nareddy, M.D. Dr. Nareddy noted that although Plaintiff's wrist
movements showed some bilateral tenderness, there were no signs
of swelling. (A.R. 232.) Dr. Nareddy further noted that
Plaintiff's hand grips were at level four out of five, finger
approximation was intact, and Plaintiff's distal interphalangeal
joints were normal. (A.R. 232.) Dr. Nareddy opined that Plaintiff
had bilateral wrist pains, most likely musculoskeletal versus
early stages of carpal tunnel syndrome. (A.R. 32, 233.) However,
Dr. Nareddy concluded that Plaintiff's physical impairments did
not warrant any functional limitations. (A.R. 233.)

On February 19, 2003, Dr. Ernest Wong, M.D., examined
Plaintiff's medical records and completed a physical RFC

assessment. (A.R. 234-243.) Dr. Wong opined that Plaintiff's RFC was to lift and carry occasionally twenty pounds and frequently ten pounds; engage in only occasional forceful or prolonged pushing, pulling, or handling with bilateral upper extremities; avoid work around heights or hazardous machinery; avoid concentrated exposure to fumes, odors, dusts, gases, etc.; and avoid work requiring depth perception. (A.R. 234-243.)

At the same time that Plaintiff was prosecuting an SSI appeal, Plaintiff again sought treatment from the Fresno County Health Services Agency, Mental Health Department, on June 4, 2003. (A.R. 266-270.) A licensed marriage and family therapist diagnosed Plaintiff with major depressive disorder without psychotic features, and post-traumatic stress syndrome. (A.R. 269.) About two weeks later, on June 18, 2003, Plaintiff was diagnosed with dysthymic disorder by a registered nurse. (A.R. 263.) Plaintiff reported that she was reducing her class load at Fresno City College from three classes to one class due to her difficulties handling life. (A.R. 262.) The registered nurse noted in Plaintiff's plan of care that he anticipated a one-year duration for treatment. (A.R. 258.)

An unascertainable treatment source completed two mental status examinations in July and September 2003,[2] revealing that Plaintiff was anxious, had mild depression and vague paranoia, but denied suicidal thoughts, had a relevant thought flow, remained cognitively intact, possessed marginal insight, and had

_____

[2] Although one progress note reflects a date of July 23, 2002 (A.R. 256), another records the date as July 23, 2003 (A.R. 255), which appears to be correct in light of the chronology of records immediately preceding and following the progress note of July 23 (A.R 254-57).

fair judgment. (A.R. 252, 256.) She had a panic attack in October 2003 (A.R. 250) but failed to show for treatment or medicine evaluation in November 2003 (A.R. 249). Symptoms of anxiety increased in December 2003 but appeared to be due to Plaintiff's being out of medications. (A.R. 248.) On January 13, 2004, a mental status exam revealed that although she was initially upset and attempted to control the agenda, she eventually became cooperative, reported some relief of depression and anxiety with the medications but not adequate in degree, and agreed to try increasing her dose of Lexapro. (A.R. 246.)

    II. Plaintiff's Testimony

    Plaintiff testified at the hearing that she was attending Fresno City College, where she took calculus and computer classes on Mondays, Wednesdays, and Fridays. (A.R. 280-81, 284-85, 301.) She had obtained her associate degree in June 2002 with a GPA of 3.0 or 2.5, and she had previously taken advanced mathematics classes. (A.R. 298-99, 301.) She was transferring to Fresno State in the fall. (A.R. 280-81.)

    Plaintiff lived alone in a three-bedroom apartment and did her own cleaning, grocery shopping, and food preparation. (A.R. 295.) She drove back and forth to school, a distance of five miles each way. (A.R. 299.) She sometimes took the bus. (A.R. 299.) There were no restrictions of Plaintiff's driver's license. (A.R. 299.) She worked as a manicurist in a hair salon on Thursdays, Fridays, and Saturdays. (A.R. 301.) She occupied her spare time with painting projects. (A.R. 294-95.)

    Plaintiff testified that she experienced panic attacks every day, flashbacks or visions approximately once a month, and

nightmares every night. (A.R. 288-92.) She had a prosthetic left eye, experienced hot flashes, and suffered from pain in her hands. (A.R. 287.) The anxiety pill that she had been taking for several months made her drowsy, so she could not take it if she went to school. (A.R. 297.)

<u>Analysis</u>

I. <u>Disability</u>

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's RFC, as well as her age, education and last fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial

gainful activity since the alleged date of the onset of the impairment, 20 C.F.R. § 404.1520 (1997);[3] 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient RFC, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and RFC, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

With respect to SSI, the five-step evaluation process is essentially the same. See 20 C.F.R. § 416.920.

II. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's subjective complaints regarding the severity of her symptoms.

The existence and severity of a person's reaction to a physical ailment, such as pain, are subjective phenomena, the extent of which cannot be objectively measured. Byrnes v. Shalala, 60 F.3d 639, 642 (9th Cir. 1995). In order to reject a

---

[3] All references are to the 2004 version of the Code of Federal Regulations unless otherwise noted.

claimant's subjective complaints, the ALJ must provide specific, cogent reasons for the disbelief. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant introduces medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the subjective symptoms, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence such as objective medical findings. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Unless there is affirmative evidence tending to show that the claimant is malingering, the reasons for rejecting the claimant's testimony must be clear and convincing, and the ALJ must set forth the rejection by identifying what testimony is not credible and what evidence undermines the claimant's complaints. Lester v. Chater, 81 F.3d at 834. The findings of the adjudicator must be properly supported by the record and must be sufficiently specific to allow a reviewing court to conclude that the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-46; Byrnes v. Shalala, 60 F.3d at 641-42 (9th Cir. 1995); see, 20 C.F.R. § 416.929(c).

Social Security Ruling 96-7p directs the adjudicator to consider not only objective medical evidence of signs, laboratory findings, and medical opinions, but also the following factors when assessing the credibility of an individual's statements:

    1. The individual's daily activities;
    2. The location, duration, frequency, and intensity
       of the individual's pain or other symptoms;
    3. Factors that precipitate and aggravate the symptoms;
    4. The type, dosage, effectiveness, and adverse

1    side effects of any medication for pain or other
     symptoms;
2    5. Treatment, other than medication, for relief of
     pain or other symptoms;
3    6. Any measures other than treatment used by the
     individual to relieve the pain or other symptoms; and
4    7. Any other factors concerning the individual's
     functional limitations and restrictions due to
5    pain or other symptoms.

6    See also Bunnell v. Sullivan, 947 F.2d at 346.

7        Here, the ALJ found Plaintiff's statements regarding the

8    severity of her symptoms were not credible to the extent alleged

9    by Plaintiff. (A.R. 32.) Plaintiff's claims of labor-restricting

10   physical and mental problems, including visual fatigue, pain in

11   her wrists and hands, severe anxiety, traumatic flashbacks, and

12   panic attacks were rejected in part because they were not

13   supported by significant objective findings. (A.R. 32, 286-289.)

14   Although the inconsistency of objective findings with subjective

15   claims may not be the sole reason for rejecting subjective

16   complaints regarding symptoms, Light v. Chater, 119 F.3d 789, 792

17   (9th Cir. 1997), it is one factor which may be considered with

18   others, Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004);

19   Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir. 1999).

20       As to Plaintiff's subjective complaints regarding her

21   physical impairments, the record contains no evidence that

22   Plaintiff was ever treated for pain in her wrists and hands.

23   Although the examining physician, Dr. Nareddy, noted that

24   Plaintiff's wrist movements showed some bilateral tenderness and

25   some reduction in range of motion, there were no signs of

26   swelling. (A.R. 232.) Dr. Nareddy further noted that Plaintiff's

27   hand grips were at level four out of five, finger approximation

28   was intact, and Plaintiff's distal interphalangeal joints were

normal. (A.R. 232.) As noted by the ALJ, Dr. Nareddy opined that Plaintiff's wrist pains were most likely musculoskeletal versus early stages of carpal tunnel syndrome. (A.R. 32, 233.) Dr. Nareddy concluded that there were no objective findings on which to base any restriction of Plaintiff's physical activities. (A.R. 233.)

Plaintiff's optometrist, Dr. Cole, noted at two appointments in 2002 that Plaintiff complained of visual fatigue, reduced visual efficiency, and poor depth perception. (A.R. 203.) Dr. Cole noted astigmatism in the right eye. (A.R. 203.) Dr. Cole found that although she only had the use of her right eye due to a childhood injury, Plaintiff was not legally blind. (A.R. 202-203.) To reduce Plaintiff's focusing demands, Dr. Cole prescribed glasses with increased power. (A.R. 203.) However, Dr. Cole did not prescribe any specific "low" devices because Plaintiff's visual acuity in her right eye was normal. (A.R. 203.) Furthermore, Dr. Cole did not assess any functional limitations based on Plaintiff's eyesight, and the record contains no evidence that Plaintiff received further treatment from Dr. Cole or any other optometrist after receiving her prescription for the more powerful lenses. Accordingly, the record supports the ALJ's conclusion that Plaintiff's complaints of labor-restricting physical limitations were not supported by substantial evidence, and the ALJ correctly noted that the main disability issue centered on Plaintiff's mental problems. (A.R. 32.)

In regard to Plaintiff's anxiety and depressive disorders, the record contains a similar dearth of objective findings to support the alleged severity of her symptoms. Plaintiff's mental

13

health treatment notes from January 1999 through January 2000 are largely based on subjective complaints, such as Plaintiff's family and relationship problems, loneliness, loss of motivation, and flashbacks. (A.R. 151-80.) Although Plaintiff's treating source, Dr. Ensom, reported approximately three times that Plaintiff appeared mildly depressed or anxious, he consistently found that Plaintiff had a broad and appropriate affect, relevant thought flow, no delusions, and no auditory or visual hallucinations. (A.R. 152, 156, 159.) Furthermore, in January 2000, Plaintiff was found to be no longer depressed or anxious, and both she and her treating source agreed that she no longer needed therapy. (A.R. 144.)

Dr. Michiel, a consultative psychiatrist, noted in November 2002 that Plaintiff's mood was depressed, but she was oriented to person, place, and date. (A.R. 207.) Plaintiff's thought process was goal-oriented, and no delusional thoughts were observed. (A.R. 207.) Dr. Michiel further noted that Plaintiff did not suffer from auditory or visual hallucinations, and she denied suicidal or homicidal thoughts. (A.R. 207.)

Plaintiff received treatment and counseling sessions from unidentifiable sources at the Fresno County Mental Health Department from June 2003 to January 2004 after receiving an initial diagnosis of major depressive disorder and post-traumatic stress syndrome by a licenced marriage and family therapist and a registered nurse. (A.R. 266, 246-64.) Throughout Plaintiff's counseling sessions in 2003 and 2004, the unidentifiable source mainly recorded Plaintiff's thoughts, worries, and feelings. (A.R. 246-64.) Two mental status exams in July and September 2003

revealed that Plaintiff experienced an anxious mood, vague paranoia, and mild depression, but had normal or fair insight, cognitive abilities, and judgment. (A.R. 252, 256.) Plaintiff was prescribed medicine by a Dr. Ghermay and experienced some relief. (A.R. 246.)

Taken as a whole, the record supports the ALJ's conclusion that Plaintiff's allegations of disabling physical and mental limitations were not supported by objective medical findings. There was no evidence that Plaintiff was hospitalized or institutionalized due to her impairments. Although Plaintiff's mental treatment sources noted depression, mild depression, or anxiety at different times, they consistently reported that Plaintiff suffered from neither delusions nor hallucinations, had normal cognitive abilities, and was goal-oriented. (A.R. 152, 156, 159, 207.) Accordingly, the ALJ did not err in finding that Plaintiff's subjective complaints were not supported by objective medical evidence.

The ALJ also rejected Plaintiff's subjective complaints based on daily activities inconsistent with the alleged severity of her impairments. (A.R. 32.) A claimant's ability to engage in activities of daily living to the extent that he or she spends a substantial part of his day engaged in pursuits involving the performance of functions that are transferable to the work setting is relevant; a specific finding as to this fact may be sufficient to discredit a claimant's allegations. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). Specifically, an ALJ may consider attendance at school or efforts

to find employment. <u>Matthews v. Shalala</u>, 10 F.3d 678, 680 (9th

Cir. 1993); <u>Gay v. Sullivan</u>, 986 F.2d 1336, 1339 (10th Cir. 1993).

In the present case, the ALJ noted that Plaintiff attended
Fresno City College three days out of the week. (A.R. 32.)
Plaintiff drove approximately five miles each way to school and
sometimes rode the bus. (A.R. 299.) Although Plaintiff was in the
disabled students program at Fresno City College. (A.R. 192), she
had received an Associate degree in 2002 with a GPA of 2.5 or 3.0
and was taking calculus and a computer course at the time of the
hearing (A.R. 284-85, 299, 304). Prior to taking calculus, she
had taken other advanced mathematics courses and was transferring
to Fresno State in the fall. (A.R. 280-81, 285-86, 304.)
Plaintiff did her own shopping and cleaning and spent much of her
time working on artistic endeavors. (A.R. 294-95.) Although
Plaintiff claimed that her mental and physical problems precluded
her from performing work (A.R. 287), she worked Thursdays,
Fridays, and Saturdays as a manicurist at a hair salon (A.R.
301). Plaintiff's testimony indicates that she spent a
substantial amount of her time performing functions transferrable
to a work setting and still performed her work as a manicurist at
the time of the hearing.

Accordingly, substantial evidence supports the ALJ's
conclusion that Plaintiff's subjective complaints were
inconsistent with Plaintiff's daily activities.

Thus, the Court rejects Plaintiff's challenge to the ALJ's
credibility determination. The ALJ provided clear and convincing
reasons, supported by substantial evidence, for rejecting
Plaintiff's subjective complaints.

1    III. <u>Development of the Record</u>

2    Plaintiff alleges that the ALJ improperly failed to develop

3    the mental health record. The law imposes a duty on the ALJ to

4    develop the record in some circumstances. 20 C.F.R. §§

5    404.1512(d)-(f), 416.912(d)-(f) (recognizing a duty of the agency

6    to develop a medical history, recontact medical sources, and

7    arrange a consultative examination if the evidence received is

8    inadequate for a determination of disability); <u>Brown v. Heckler</u>,

9    713 F.2d 441, 443 (9th Cir. 1983) (recognizing the ALJ's duty

10   fully and fairly to develop the record even if the claimant is

11   represented by counsel).

12   An ALJ has a duty to develop the record when the record

13   before the ALJ is ambiguous or inadequate to allow for proper

14   evaluation of the evidence. <u>Mayes v. Massanari</u>, 262 F.3d 963, 968

15   (9th Cir. 2001). There is a heightened duty where the claimant is

16   suffering from a mental condition because mental claimants may

17   not be able to protect themselves from loss of benefits by

18   producing evidence. <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th

19   Cir. 1991). However, it is the claimant's duty to prove that he

20   or she is disabled. 42 U.S.C. § 423(d)(5) (noting an individual

21   will not be considered disabled unless he or she furnishes

22   medical and other evidence of disability); <u>Bowen v. Yuckert</u>, 482

23   U.S. 137, 146 n.5 (1987); <u>Reed v. Massanari</u>, 270 F.3d 838, 841

24   (9th Cir. 2001).

25   In the present case, the ALJ described in detail Plaintiff's

26   voluminous mental health treatment records and evaluations from

27   all relevant periods of alleged disability. These include

28   progress notes from June 2003 through January 2004 and from

17

January 1999 through January 2000, Dr. Michiel's examination
report from November 2002, and Plaintiff's October 1997
psychological evaluation report from the Department of
Rehabilitation. (A.R. 30-31.) Dr. Michiel's November 2002
examination report and Dr. Ensom's reports from 1999 through 2000
include a wide range of objective findings. (A.R. 152, 156, 159,
206-207.) As discussed above, the medical record contains quite
consistent evidence that Plaintiff suffered from various levels
of depression and anxiety, but she had normal or fair insight,
cognitive abilities, and judgment, and did not experience
delusions or hallucinations. (A.R. 152, 156, 159, 206-207, 252,
256.)

     Review of the entire record indicates that Plaintiff's
mental health evidence was neither ambiguous nor inconclusive.
The records span substantial lengths of time and contain
consistent objective findings. The ALJ clearly had sufficient
information to make an assessment of Plaintiff's mental residual
functional capacity. Accordingly, the Court finds Plaintiff's
assertion that the ALJ improperly failed to develop the mental
health record to be without merit.

     IV. <u>Mental Health Evidence</u>

          A. <u>Limitation to Simple, Repetitive Tasks</u>

     Plaintiff alleges that the ALJ improperly evaluated the
mental health evidence. Specifically, Plaintiff contends that the
ALJ failed to discredit Dr. Michiel's conclusion that Plaintiff
could only perform simple repetitive tasks. (A.R. 207.)

     The uncontroverted opinion of an examining, non-treating
physician may be rejected if the ALJ states clear and convincing

1   reasons. Lester v.Chater, 81 F.3d 821, 830-31 (9th Cir. 1995);

2   Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The

3   rejection of an opinion must be explicit, and reasons must be

4   stated; it is not sufficient to rely on another opinion without a

5   statement of reasons therefor. Nguyen v. Chater, 100 F.3d 1462,

6   1464 (9th Cir. 1996).

7        Here, the ALJ's RFC assessment did not include any mental

8   limitations. (A.R. 32.) However, based on his examination of

9   Plaintiff, Dr. Michiel concluded that Plaintiff was unable to

10  perform "an extensive variety of technical and/or complex

11  instructions," but could carry out "one or two step simple job

12  instructions." (A.R. 207.) The ALJ did not explicitly reject Dr.

13  Michiel's opinion. Furthermore, the state agency physician, Dr.

14  Murillo, opined in a mental RFC assessment that Plaintiff was

15  "moderately limited" in her ability to remember, understand, and

16  carry out detailed instructions. (A.R. 225.) The ALJ failed to

17  consider this evidence corroborating Dr. Michiel's opinion.

18  Finally, the ALJ failed to note that in Dr. Ikawa's physical RFC

19  assessment, Dr. Ikawa stated, "Dr. Michiel indicates clmt can

20  sustain SRT [simple repetitive tasks]. This MSO will be given

21  significant wgt as it is supported by the obj findings." (A.R.

22  244.) Dr. Ikawa further stated, "Please affirm mental RFC for

23  SRT." (A.R. 244.) Accordingly, the ALJ erred in failing to

24  address or expressly reject the consistent opinions of Dr.

25  Michiel and the state agency physicians as to Plaintiff's

26  limitation to simple repetitive tasks.

27        B. Durational Requirement

28        Although the ALJ erred in not stating reasons for rejecting

19

these sources' opinions regarding Plaintiff's mental residual

functional capacity, the ALJ found that Plaintiff did not meet

the durational requirement for disability because there were no

continuous twelve-month periods of treatment for an impairment in

the record. (A.R. 32.) The ALJ stated:

> The claimant's main problem is mental. She went to
> mental health from January 1, 1999[4] (Exhibit 2F/38)
> until discharge on January 6, 2000 (Exhibit 2F/5).
> She started back in mental health on June 4, 2003
> (Exhibit 12F). The record shows proposed duration
> is one year (Exhibit 12F/13) and so there are no
> 12 month periods of treatment in the record.

(A.R. 32.)

     For purposes of DIS and SSI, a disability is defined as:

> ...inability to engage in any substantial gainful activity
> by reason of any medically determinable physical or
> mental impairment which can be expected to result
> in death or which has lasted or can be expected to last
> for a continuous period of not less than 12 months....

42 U.S.C. §§ 423(d)(1)(A); see 42 U.S.C. 1382c(a)(3)(A) ("unable

to engage in" the same). A claimant carries the burden of

establishing a prima facie case of disability, including that he

or she was disabled by an impairment for the requisite period.

Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995) (disability

benefits rejected for obesity impairment); 20 C.F.R. §§ 404.1509

(DIB), 416.909 (SSI).

     The record supports the ALJ's assertion that Plaintiff did

not meet her burden to establish the duration of her mental

---

[4]As to the first treatment period, the Court notes that the ALJ's
reference to January 1, 1999 as the start of the first period is erroneous.
Review of Exhibit 2F/38 (A.R. 179) reveals that the date the periodic review
form in question was completed was January 11, 1999, not January 1, 1999;
reference to surrounding pages, consisting of related records regarding the
same treatment date of January 11, 1999, likewise reveals a consistent date of
January 11, 1999. (A.R. 170-80.) Indeed, had the date of January 1 been
correct, the ALJ's conclusion of less than twelve months of treatment would
not have been supported.

impairment. Although Plaintiff alleged a disability onset date of October 1, 1998, she did not provide medical evidence that she received mental health treatment before January 11, 1999. (A.R. 171.) Plaintiff's treatment ceased on January 6, 2000, after Plaintiff and her therapist agreed that therapy was no longer needed and Plaintiff was no longer depressed or anxious. (A.R. 138.) This period was five days short of the durational requirement.

After more than three years, Plaintiff began to receive mental health treatment again on June 4, 2003. (A.R. 266-70.) On that date a licensed marriage and family therapist assessed her symptoms, apparently referred her to one Anthony Gonzales to assist her with her SSI appeal (A.R. 270), and recommended that she be assessed by a nurse and thereafter be treated with therapy. (A.R. 266-70.) The only evidence tending to support a finding of sufficient duration was a statement by a registered nurse in the "PLAN OF CARE" dated June 18, 2003, that the "PROPOSED DURATION" of Plaintiff's treatment plan was anticipated to be one year. (A.R. 258.) The record as of that date supported an inference that because a nurse proposed a plan of treatment to last one year, Plaintiff's treatment might last one year. However, there is no evidence of treatment after January 2004; thus, there was no evidence from an acceptable medical source produced at the hearing in February 2004 demonstrating that Plaintiff's actual treatment for her impairment endured longer than seven months. Indeed, the evidence warrants an inference that treatment terminated as of the time of the last treatment record and thus terminated before the hearing and long before the

twelve-month period had elapsed.

Where the plaintiff has presented no evidence that her impairment meets the duration requirement, substantial evidence supports a conclusion that the claimant was not disabled by the impairment. <u>Roberts v. Shalala</u>, 66 F.3d 179, 182. Where no physician has concluded that the claimant would be unable to work for the statutorily required period, a conclusion that the claimant was not disabled was correct and supported by substantial evidence because the applicant failed to demonstrate eligibility for SSI benefits. <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1458 (9th Cir. 1989).

Accordingly, substantial evidence supports the ALJ's finding that Plaintiff failed to carry her burden of establishing that the impairment had lasted or was expected to last for a continuous period of not less than twelve months. Substantial evidence supports a conclusion here that Plaintiff did not establish the durational requirement for showing disability.

### C. <u>Additional Evidence</u>

Without citing to any report or other evidence, Plaintiff claims that had the ALJ had contacted a Dr. Chatsworth at the Mental Health Department, he would have found that Plaintiff's mental impairment "is totally disabling." (Pl.'s Br. 3.) The Court interprets this as an effort to establish a continuing impairment after the appropriate period for establishing a disability has passed and the record has closed. Plaintiff further claims that "attached visual reports" indicate that Plaintiff can no longer use her eyes for prolonged periods. (Pl.'s Br. 4.) However, there are no such reports attached.

It is the burden of the party seeking the Court to consider new evidence to show that the evidence is material and probative of the party's condition at the relevant time period, namely at or before the disability hearing. Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 512 (9th Cir. 1987). In addition to failing to include the visual reports, Plaintiff makes no showing or argument that any evidence is probative of Plaintiff's condition at the relevant time period. Under Roberts and Sanchez, Plaintiff's argument is inadequate because Plaintiff did not submit any additional evidence to either the ALJ or this Court, and in any event, failed to make the requisite showing.

The Appeals Council denied Plaintiff's request for review on May 22, 2004. (A.R. 20-22.) Plaintiff apparently submitted new evidence to the Appeals Council in connection with a request to reopen after the date of the Appeals Council declined Plaintiff's request for review. (A.R. 4.) On August 6, 2004, the Appeals Council denied Plaintiff's request to reopen the ALJ's final decision. (A.R. 4.)

Where the Appeals Council has declined to review a case, a subsequent decision not to reopen a prior final opinion is discretionary and is not subject to judicial review absent a constitutional challenge. Evans v. Chater, 110 F.3d 1480, 1482 (9th Cir. 1997.) Further, it is recognized that the Appeals Council is entitled to make a threshold inquiry into additional evidence submitted in order to resolve the reopening issue without actually reopening an ALJ's decision or rendering a new final decision. Banta v. Sullivan, 925 F.2d 343, 344-45 (9th Cir. 1991).

1   The additional records were submitted to the Appeals Council

2   with connection with a request to reopen; that request was

3   denied. Thus, this Court cannot review that decision; further,

4   because the decision was to deny a request for reopening, the

5   records were never before the administrative tribunal in

6   connection with the merits of Plaintiff's claim. See, Banta v.

7   Sullivan, 925 F.2d 343, 344-45 (9th Cir. 1991). It is established

8   that a claimant cannot discharge her burden of establishing the

9   durational requirement by asserting that her condition remains

10  unchanged after an ALJ has rendered a decision and the record in

11  a case has closed. Roberts v. Shalala, 66 F.3d 179, 182-83. (9th

12  Cir. 1995.) In Roberts, a woman who otherwise met a listing for

13  obesity for only the seven months prior to the date of her

14  hearing was denied benefits by an ALJ. On appeal, in addition to

15  noting that the claimant had failed to present evidence

16  suggesting that her impairment would exist for any continuous

17  twelve-month period, the court found insufficient the Plaintiff's

18  attempt to argue that her condition continued after the record in

19  the case had closed because there was no evidence that revealed

20  that her condition had changed after the case closed. Id. at 182-

21  83.

22      In summary, the Court concludes that substantial evidence

23  supports the ALJ's finding that Plaintiff failed to demonstrate

24  that her mental impairment met the duration requirement.

25      V. Disposition

26      The ALJ erred in assessing Plaintiff's mental RFC because he

27  failed to state adequate reasons for rejecting the limitation to

28  simple, repetitive tasks (SRT). The ALJ further concluded that

24

1   Plaintiff could perform her past relevant work as a manicurist as

2   customarily performed in the national economy based on the

3   vocational expert's testimony that one who was not limited to SRT

4   could perform the position as customarily performed. (A.R. 32-33,

5   303-06.) The ALJ's failure to reject or incorporate the SRT

6   limitation undermined the VE's testimony because that testimony

7   was based on an assumption that the claimant could perform more

8   complex tasks and was not limited to SRT. Thus, the ALJ's

9   decision that Plaintiff was not disabled because of ability to

10  perform her past relevant work was not supported by substantial

11  evidence.

12       With respect to assessing the effect of the ALJ's error, it

13  is established that it is the initial burden of the claimant to

14  prove that the claimant is unable to return to his or her former

15  type of work; the burden then shifts to the Commissioner to

16  identify other jobs that the claimant is capable of performing

17  considering the claimant's residual functional capacity, as well

18  as her age, education and last fifteen years of work experience.

19  Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990). In this

20  case, the burden never shifted to the Commissioner because

21  Plaintiff failed to make the required initial showing with

22  respect to the duration of her mental impairment. The ultimate

23  validity of the ALJ's decision that Plaintiff was not disabled is

24  thus not compromised by the ALJ's error with respect to RFC

25  because at an antecedent stage of the five-step disability

26  analysis, Plaintiff failed to meet her burden regarding the

27  duration of her mental impairment.

28       Where an ALJ's error does not affect the ultimate outcome of

the case, remand is not necessary. In <u>Batson v. Commissioner</u>, 359 F.3d 1190, 1196-97, an ALJ rejected a claimant's credibility with respect to the extent of subjective complaints because of 1) a lack of objective findings and inconsistencies exhibited by the claimant during a clinical examination, as noted by a consulting, examining physician; and 2) unrelated inconsistencies between the complaints, on the one hand, and the extent of treatment received and activities of daily living, on the other. The court concluded that in making the credibility determination, even if the ALJ erred in assuming that the claimant sat while watching six to ten hours of television daily, the error would not require remand because of the other independent findings supported by substantial evidence. The court stated:

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied, there was substantial evidence supporting the ALJ's decision. Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible. See <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1131 (9th Cir.1990) (applying the harmless error standard); <u>Booz v. Sec'y of Health and Human Serv.</u>, 734 F.2d 1378, 1380 (9th Cir.1984) (same). In light of the substantial evidence supporting the ALJ's conclusions on Batson's credibility, we do not think that the ALJ's assumption about Batson sitting while watching television affected the ALJ's conclusion or requires remand.

<u>Batson</u>, 359 F.3d at 1197.

In <u>Curry</u>, erroneous findings regarding the age and education of the claimant did not require remand because they were immaterial to the decision regarding disability. <u>Curry</u>, 925 F.2d at p. 1131. In <u>Booz</u>, 734 F.2d at 1379-80, it was decided that

even if the ALJ had erroneously applied the grids at a later
stage of the analysis, his error was harmless because application
of the grids was unnecessary. The claimant had suffered a
previous final decision that he was not disabled and thus was
subject to a presumption of continuing non-disability; because
the claimant had not shown any greater disability and thus had
not rebutted the presumption of non-disability, the burden never
shifted to the agency, and therefore the application of the grids
was unnecessary. Any error made in connection with application of
the grids was thus harmless.

Here, any error of the ALJ with respect to Plaintiff's RFC
was likewise harmless. Further, due to this failure, the Court
need not address Plaintiff's assertion that the ALJ erred in
finding that Plaintiff was able to perform past relevant work.

V. <u>Disposition</u>

Based on the reasoning above, the Court concludes that the
ALJ's decision was supported by substantial evidence in the
record as a whole and was based on proper legal standards.

Accordingly, the Court AFFIRMS the administrative decision
of the Defendant Commissioner of Social Security and DENIES
Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for
Defendant Jo Anne B. Barnhart, Commissioner of Social Security,
and against Plaintiff Kristine Habib.

IT IS SO ORDERED.

**Dated:    July 31, 2006**                        **/s/ Sandra M. Snyder**
icido3                                          UNITED STATES MAGISTRATE JUDGE

27